CARTER v. CURRENT RIVER RAILROAD COMPANY, Appellant.

### Division One, June 12, 1900.

1. **Killing Stock by Railroad:** DOUBLE DAMAGES: STATUTE CONSTITUTIONAL. The statute allowing double damages to the owner of stock killed by a railroad at a point where the railroad passes through, along and adjoining uninclosed land, in consequence of the railroad's failure to construct and maintain a lawful fence or cattle-guard, is constitutional. (Following Kingsbury v. Railroad, 156 Mo. 379).

2. **Justice of Peace:** HOW PROVEN. The record recites that on the 15th day of September, 1897, "there was filed in the office of the clerk of the circuit court of Carter county a transcript from M. H. Moss, one of the justices of the peace in and for said county, which transcript and accompanying papers are in words and figures as follows:"—The transcript states the parties; that the suit was before Moss, "justice of the peace within and for Carter county, Mo.;"

that the suit was filed August 27, 1897, "for stock killed by defendant for $35;" the issuance of the summons returnable September 11, 1897; the appearance of both parties on the return day; the trial and judgment; the issuance of the execution "to Charles Frazier, constable of Carter township, Carter county, Missouri," and the appeal. *Held*, that these recitals are sufficient to show, *prima facie* at least, that Moss was justice of the peace of Carter township, in which the petition charges that the stock was killed.

3. **Evidence:** PRIMA FACIE CASE FOR PLAINTIFF: OVERTHROWN. Where the evidence produced by plaintiff is sufficient to make out a *prima facie* case for him, and if there had been no evidence introduced by defendant it could not be said there was no substantial evidence to support the verdict, but the defendant offered evidence, which if believed by the jury, was sufficient to overcome plaintiff's *prima facie* case, to which plaintiff offered no countervailing testimony, this court will not interfere with the verdict since the real issue, being a question of fact about which fair-minded men might reasonably differ, is one for the jury.

Appeal from Carter Circuit Court.—*Hon. John G. Wear,* Judge.

AFFIRMED.

*W. J. Orr* for appellant.

(1) There is no proof that M. H. Moss, the justice before whom this suit was commenced, resided or held his office in the township where the stock was killed, or in an adjoining township. Neither does the transcript of the justice show this to be so. R. S. 1889, sec. 6122; Lindsay v. Railroad, 36 Mo. App. 51; Rohland v. Railroad, 89 Mo. 180. (2) The verdict is without evidence to support it. The defendant's engineer, the only witness who knew anything about the movements of defendant's trains, was not contradicted nor impeached, and the jury had no right to disregard his testimony. Oglesby v. Railroad, 150 Mo. 137; Reichenbach v. Ellerbe, 115 Mo. 588; Long v. Moon, 107 Mo. 334; Caruth v. Richeson, 96 Mo. 186; Avery v. Fitzgerald, 94 Mo. 207; Garrett v. Greenewell, 92 Mo. 120;

Spohn v. Railroad, 87 Mo. 74; Whitsett v. Ranson, 79 Mo. 258.

*John C. Brown* and *Daniel Huett* for respondent.

(1) Appellant admits in its affidavit for an appeal and recognizance in appeal that M. H. Moss was a justice of Carter township, Carter county, Missouri, and no court ever required further proof of this jurisdictional fact. (2) As to the second contention of appellant, we deem it sufficient to say that the jury was the judge of the weight of the evidence and credibility of the witnesses and there is not anything in the record to authorize this court in saying they were influenced by passion or prejudice.

MARSHALL, J.—This is an action under section 2611, Revised Statutes 1889, to recover double the value—thirty-five dollars—of two steers alleged to have been run over and killed, by one of defendant's trains, on the 28th of August, 1896, in Carter township, Carter county, Missouri, at a point not within the limits of any corporation, town or city or switch limits of any station or at any crossing of any public or private road or street over the railroad, but where the railroad passes through, along and adjoining uninclosed lands, in consequence of the defendant's failure to construct and maintain a lawful fence and cattle guard, as is by the said statute required.

The suit was begun and tried before M. H. Moss, who is described in the caption of the petition to be "a justice of the peace of Carter township, Carter county, Missouri," who rendered judgment for the plaintiff for seventy dollars, from which defendant appealed to the circuit court, where upon a trial *de novo* the same judgment was rendered, and defendant appealed to this court.

The defendant contends here, as it did in the trial court, 1st, that section 2611, Revised Statutes 1889, violates sections 20 and 30 of article 2 and section 53 of article 4 of the Constitution of Missouri, and articles 5 and 14 of the Constitution of the United States; 2d, that there is no proof that M. H. Moss before whom this suit was commenced was a justice of the peace of the township in which the stock was killed; and, 3d, that there was not sufficient evidence to make a case under the statute.

I.

The constitutionality of section 2611, Revised Statutes 1889, has so recently been sustained in a clear opinion by BRACE, P. J., in the case of Kingsbury v. M. K. & T. R. R., 156 Mo. 379, and in which he so exhaustively reviews the prior decisions of this court and of the Supreme Court of the United States and shows that such has been the uniform and unbroken line of decisions, that nothing further need be said than that the constitutionality of that statute must be regarded as settled in this State.

II.

To show that Moss was a justice of the peace for Carter township, Carter county, the respondent sets out in full the petition, which recites that fact in the caption, the summons which the justice issued to the constable of that township, the return of the constable showing the service of the summons upon the agent of the defendant in that township, the affidavit for appeal signed by appellant's attorney which recites that the suit was before Moss as justice of the peace for that township, and the appeal bond which recites in its

body that the defendant "has appealed from the judgment of M. H. Moss, a justice of the peace for Carter township, in Carter county, Missouri," and the respondent contends that these facts conclude the inquiry on this question. If these facts appeared in the record before this court there would be no room for this contention of the defendant, but of these, only the petition, reciting in its caption, "Before. M. H. Moss, justice within and for Carter county, Mo." is embodied in the transcript in this case.

But there is one other recital in the record before this court which is most important; it is the recital that, "On the 15th day of September, 1897, there was filed in the office of the clerk of the circuit court" (of Carter county) a transcript from M. H. Moss, one of the justices of the peace in and for said county, which transcript and accompanying papers are in words and figures as follows:" That transcript states the parties; that the suit was before Moss, "justice within and for Carter county, Mo.;" that the suit was filed August 27, 1897, "for stock killed by defendant for $35;" the issuance of the summons, returnable September 11, 1897; the appearance of both parties on the return day; the trial and judgment; the issuance of the execution to "Charles Frazier, constable of Carter township, Carter county, Missouri;" and the appeal. All of which complies with the duty imposed upon the justice of the peace by section 6131, R. S. 1889.

These recitals are sufficient, without considering the other matters cited by respondent, which can not be here considered because they are not in the record before us, to show, *prima facie*, at least, that Moss was a justice of the peace for Carter township, in which township the petition charges the stock was killed, and that this suit was begun in that township, and hence satisfy the requirements of the rule laid down in Rohland v. Railroad, 89 Mo. 180, and Lindsay v. Railroad, 36 Mo. App. 51.

### III.

We adopt the defendant's statement of its third contention, which is as follows:

"We next contend that the verdict is without sufficient evidence to support it, and that it is in direct conflict with the uncontradicted evidence.

"The plaintiff's witnesses testified to circumstances (there were no eye witnesses) from which the jury might have found that the stock was killed by a train, but for the evidence of defendant's witnesses. Plaintiff's witnesses testified to finding the two steers near the foot of a steep rocky bluff near defendant's track, and that they saw what they took to be blood on the ties, and found a horn of one of the steers on the track. This is not inconsistent with the testimony and theory of defendant's witnesses that they found signs on this rocky precipice which indicated that there had been a struggle there and the cattle fell on to the track, near where they were found.

"Plaintiff's witnesses testified that they found the steers Sunday and that they appeared to have been killed Saturday or Friday before. That they heard trains on the road but did not see them. That the trains of the defendant and also of the Missouri Lumber & Mining company were, on Friday, run over the track at this point. The defendant's engineer, J. J. Angerbaugh, testified that he was the engineer on the last of the defendant's trains that passed the point where the stock was afterwards found, going west, on Friday evening, and his was the first of defendant's trains to pass this point the next morning; that he did not see, or strike, the cattle as he went west Friday evening, but did see them dead on the right of way as he went east the next morning. The Current River railroad is a short branch of the main line, and runs from Willow Springs, in Howell

county, to Grandin, in Carter county. Now, we insist that this engineer was not impeached nor contradicted and his testimony was consistent with all the circumstances detailed by plaintiff's witnesses. Hence the jury was not authorized to disregard this positive, undisputed and unimpeached testimony, and to find for plaintiff on mere conjecture, and especially so when all of the circumstances testified to by plaintiff's witnesses could have been reconciled with the testimony of this engineer."

The sum of this contention is that the evidence adduced by the plaintiff was sufficient to make out a *prima facie* case for the plaintiff, and if there had been no evidence introduced by the defendant it could not have been fairly said there was no substantial evidence to support the verdict. But the defendant offered evidence, which, if believed by the jury, was sufficient to overcome the *prima facie* case made by the plaintiff; that is, as applied to this case, the plaintiff offered testimony tending to prove a theory upon which the plaintiff was entitled to a verdict, but the defendant offered testimony tending to prove a different theory which if true would defeat the plaintiff's right to recover; the defendant offered no testimony contradicting the plaintiff's testimony except as its theory tended to do so, and no testimony to impeach the plaintiff's witnesses, and the plaintiff offered no testimony tending to contradict the defendant's theory except as its theory tended to do so, and no testimony to impeach the defendant's witnesses, and the defendant contends, upon the faith of Reichenbach v. Ellerbe, 115 Mo. 588, that under these conditions it is entitled to a judgment at the hands of this appellate court.

This contention is best answered by the question, upon the whole case was the defendant entitled to have the trial court sustain a demurrer to the evidence and direct a verdict for the defendant?

Neither the case of Reichenbach v. Ellerbe, 115 Mo. 588, nor the dissenting opinion in Gannon v. Laclede Gas Co., 145 Mo. l. c. 520, support this contention. The rule is thus stated in the latter case at page 549: "Juries try *questions* of fact; that is, controversies about the facts. Where there is no controversy, meaning an affirmance of a fact on one side and a denial on the other, there is no *question* as to the facts. If the facts are shown by competent evidence on one side, and the evidence is not contradicted on the other, and there is no attempt to impeach the witnesses, there is no *question* of fact involved in the case, but a simple question of law is presented." Or otherwise illustrated: where the suit is on a promissory note and the answer is a general denial and a plea of confession and avoidance or a general denial and a plea of payment, and the plaintiff offers the note in evidence and rests his case, thereby making out a *prima facie* case, and the defendant then introduces evidence tending to support the plea of confession and avoidance or of payment, and the plaintiff introduces no countervailing testimony, the defendant, clearly, has overthrown the plaintiff's *prima facie* case, and is entitled to a verdict.

But how does that rule fit the facts in this case, which are, according to the plaintiff's evidence—there were no witnesses who admitted seeing the killing—that the physical facts show that the train ran over the stock, and according to the defendant's theory that the physical facts showed that there had been a struggle on the rocky precipice near the track and that the cattle fell onto the track? It can not fairly be said that proof of the one theory overcomes the other theory. The true cause of the death of the stock was a question about which fair-minded men might reasonably differ and therefore a question of fact for the jury was presented to be decided upon the one or the other conflicting theory or state of facts proved. There was no positive testimony

that the evidences of a struggle on top of the rocky precipice were left by contest between the two steers that were afterwards found dead on the side of the railroad track, and no positive testimony that those steers fell over the precipice. The defendant's testimony might warrant the jury in so believing, but the evidence was not of such a character as to compel that conclusion as a matter of undisputed fact. It might just as well be that the hair and what the defendant's witnesses took to be blood found on the top of the precipice, was hair left by other steers or was not blood at all, as it could be that what the plaintiff's witnesses took to be blood on the ties was not blood, or that the horn of one of the steers which was found on the track was broken off of the steer when falling over the precipice and lodged on the track, and was not broken off and left there by the train running over the steer. All of which simply illustrates the fact that how the steers came to their death was a question of fact for the jury, and as the jury had the conflicting theories before them, with the right to judge between them, it is not the practice of this court to disturb the verdict in such cases. The judgment of the circuit court is therefore affirmed. All concur.