## JOHN L. KIPP, Appellant, v. DAVID OYSTER, Respondent.

Kansas City Court of Appeals, December 7, 1908.

1. MASTER AND SERVANT: Independent Contractor: Evidence: Writing: Jury. When all or some of the facts essential to the characterization of an employment are the subject of controversy in the evidence, the question of independent contractor is for the jury; but where the facts are undisputed the question is for the court, even though the contract be in parol and not in writing.

2. ————: ————: Definition. One who renders services in the course of an occupation representing the will of his employer

only as to the result of his work and not as .to the means by which it is accomplished, is an independent contractor.

3. ———: ———: Evidence. On the evidence plaintiff is held to have been employed, controlled and paid by the independent contractor to whom he alone owed obedience and not to the defendant.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Ward, Hadley & Neel* for appellant.

(1) Where there is some evidence that the relation of independent contractor does not exist between the owner and employee, or where the alleged contract of employment is oral, then the question of whether or not such independent contractor relationship exists is one for the jury. Gayle v. Car & Foundry Co., 177 Mo. 447; 16 Am. & Eng. Enc. of Law, p. 191.

*Keplinger & Trickett* and *W. R. Thurmond* for respondent.

(1) The trial court was right in sustaining motion for new trial "because plaintiff is not entitled to recover." Mathis v. Stock Yards, 185 Mo. 434; Lee v. Railroad, 112 Mo. App. 372; Porter v. Railroad, 71 Mo. 66; Fugler v. Bothe, 117 Mo. 475; Steinhauser v. Spraul, 127 Mo. 562. (2) All of the evidence introduced in this case was to the effect that Casey was an independent contractor and not the agent for Oyster. And Casey being an independent contractor, there was no liability on the part of Oyster for Casey's negligence, if any.

JOHNSON, J.—Action by a servant against his master on account of personal injuries alleged to have been caused by the negligence of the master. Plaintiff was employed by Michael J. Casey to work as a

carpenter on a business building being erected on lots in Kansas City owned by David Oyster and Emily Fiedler. He alleges that his injury occurred during the employment; that it was caused by negligence of Casey in failing to exercise reasonable care to provide him a safe place in which to work, and that Casey was the vice-principal of Oyster and Fiedler, the owners of the property. All of these persons were joined as parties defendant, but during the trial, plaintiff, compelled by adverse rulings of the court, took a nonsuit as to defendants Fiedler and Casey and proceeded with the action against Oyster as the sole defendant. The jury returned a verdict for plaintiff in the sum of $3,800, but afterward the court sustained defendant's motion for a new trial on the ground that "plaintiff is not entitled to recover" and plaintiff appealed.

The defenses pleaded in the answer are a general denial, a plea of contributory negligence and a plea that Casey, the employer of plaintiff was not the agent of defendant, but was an independent contractor. The court refused to give the jury a peremptory instruction to find for defendant. A careful examination of the facts of the case and of the principles and rules of law applicable thereto convinces us that the instruction should have been given on the ground that the relationship of Casey to Oyster was that of independent contractor. We concede for argument that plaintiff adduced some evidence—meagre, it is true, but still of substance—from which the conclusion might reasonably be drawn that the injury was caused by the negligence of Casey in the construction and maintenance of a certain scaffold on which plaintiff was required to work and which collapsed under the weight of plaintiff and his fellow-workmen. From this standpoint, we turn to the facts in evidence that bear on the issue we consider to be of controlling importance.

Plaintiff testified that about three weeks before the injury, he was employed to work as a carpenter by

Casey, who is described in the evidence as boss carpenter and contractor. He worked on a number of buildings for which Casey was doing the carpenter work, was paid thirty-five cents an hour by Casey and looked to Casey alone for orders. Another workman similarly employed, who was introduced as a witness by plaintiff; testified that on the day he entered the services of Casey, he was at work on defendant's building when defendant approached him and inquired for Casey, remarking, "Mr. Casey is my foreman and I am waiting here to see him." From the evidence of defendant, it appears that Mrs. Fiedler and Oyster, who owned adjacent lots on Southwest Boulevard, decided to build a two-story building on the two lots, the first story to be used for business purposes, the second as a hall. They did not employ an architect but adopted plans prepared for them by Casey who also submitted an estimate of the cost of the building and a statement of the materials required in its construction. An oral agreement then was made with Casey, the nature of which appears in the following extract from his testimony:

"Q. Well, just state the arrangement, Mr. Casey, between you and Mr. Oyster, upon what terms you were to erect that building? A. I was to do all the carpenter work for so much money; they asked me to make an estimate on the cost of the entire building; I done so. Then they told me to get contractors to figure on the different parts of the work; I sent out postal cards to two or three or four different graders; Mr. Oyster didn't know any; I told him I knew some and I would send them postal cards to come around. There was three or four came and I gave it to one grader. I don't know who he was. Mr. Oyster let the stonework himself, and also let the brick work. I had nothing to do with that, nor the plastering, nor the plumbing. He asked me about lumber, about where to get the lumber at; I suggested two or three different firms. We got the lumber from the Kansas City Lumber Company.

They gave us the best figures. He asked about the mill work and I suggested two or three mills, and he contracted with the Western Sash & Door Company for the mill work, and for the roof with the Standard Roofing Company. All I had to do was to do all the carpenter work and look after the locating of windows, doors, chimneys, and such as that; to see that everything went right and wouldn't interfere with my work.

"The Court: Were you paid for that work in advising him about the names of these contractors? A. No, sir, I didn't get no pay for it.

"The Court: Go ahead.

"Q. Mr. Casey, who hired the men for doing the carpenter work? A. I hired them myself. Q. And Mr. Oyster didn't hire any of them, did he? A. No, sir. Q. State whether or not Mr. Oyster had any authority over your men either to hire or discharge them? A. No, sir. Q. I will ask you who paid the men for the doing of that work? A. I paid them myself. Q. I will ask you if you changed the men around from this work to other work? A. Yes, sir. Q. During the progress of it? A. Yes, sir. Q. Did you keep separate their time upon this work from the other? A. I kept every job separate. Q. For whose convenience did you do that? A. For my own; to know just how they are coming out on each job. Q. Did you ever make any report to Mr. Oyster or Mrs. Fiedler of any time that had been put in by any carpenter upon that work? A. No, sir. Q. When the carpenter work was completed, I will ask you if there was a settlement made upon the basis of your original contract as to the amount of money you were to be paid? A. Yes, sir. Q. I will ask you if that amount of money was paid? A. Yes, sir. Q. And a receipt was given in full? A. In full."

Casey was to receive $850 for doing the carpenter work. He was paid more than that amount, but the excess is shown to have been paid for "extras." The

instructions given to the jury at the request of plaintiff are based on the hypothesis that the facts just stated present the question of whether Casey was an independent contractor or the agent of the owners of the building as an issue of fact for the jury to decide. It is argued by plaintiff in support of this theory that where the contract between the owners of the building and the master builder is not reduced to writing and its character must be ascertained from the testimony of witnesses, the question of the relationship established by the contract necessarily is one for the jury to decide under appropriate instructions from the court. This is the rule in cases where all or some of the facts essential to the characterization of the employment are a subject of controversy in the evidence offered by the respective parties, but where plaintiff fails to offer any substantial evidence to sustain his contention that the relationship was of the kind pleaded in his petition, and his cause of action is founded on the supposed existence of such relation, there is no issue to go to the jury, and his action must fail for lack of proof. In the present case, the burden was on plaintiff to plead and prove that Casey was the vice principal of defendant and that burden cannot be evaded on the ground that the mere fact of the contract being oral, of itself, would suffice to send to the jury the question of the nature of the employment even in the face of uncontradicted evidence introduced by defendant. The rule to be applied to the facts before us thus is stated by the Supreme Court in Gayle v. Mo. Car & Foundry Co., 117 Mo. 427: "When the facts are undisputed, no doubt exists that the court may declare as a matter of law whether one is an independent contractor or merely a servant as in Long v. Moon, 107 Mo. 334. But where the facts are disputed, the proper course, it seems to us, must be to leave it to the jury under proper instructions to say whether one was an independent contractor or a servant accordingly as the facts are found."

Guided by this rule, we turn now to the evidence to ascertain whether any of the essential facts are in dispute. An independent contractor is defined to be one "who renders service in the course of an occupation representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished." [Gayle v. Mo. Car Foundry Co., supra, and cases cited.] "In every case the conclusive test to be sought after by which to determine whether or not the immediate actor was the servant of the defendant is whether the defendant reserved control over him as to the manner of doing the work. . . . The power to control implies the power to discharge for disobedience and accordingly the power to discharge has frequently been regarded as the test by which to determine whether the relation of master and servant existed. . . . A person who, skilled in a particular employment, engages with another to do a particular job of work for a round sum, reserving for himself the right to determine by what methods he shall accomplish the work, is regarded as an independent contractor and not as the servant or agent of the other contracting party in the sense which makes the latter responsible for any wrong he may commit in doing the work." [Fink v. Furnace Co., 10 Mo. App. 61; Kiser v. Suppe, 112 S. W. 1007; 133 Mo. App. 19.]

All of the evidence shows that Casey was employed to do the carpenter work for a lump sum, to control, discharge and pay his employees, and was to be responsible to defendant only for the result of his work and not for the means by which it should be accomplished. Defendant had no right to discharge him for disobedience nor to control or discharge his servants. There is no inconsistency that reasonably may be implied between the fact that as to the carpenter work, Casey was an independent contractor and the further fact that he rendered other services to the owners in the preparation of plans and estimates and the purchase

of materials, etc., for which he received no compensation. It is a matter of common knowledge that contractors frequently perform such services as an inducement to the owner to award them the contract for the work on which they bid. Nor do we think there is probative value of sufficient strength to raise an issue in the fact that defendant spoke of Casey to a workman as his foreman. That was merely a convenient expression employed by one obviously not versed in the legal definitions of such terms, and used under circumstances that did not call for exactness. The facts remain that plaintiff was employed, controlled and paid by Casey to whom, alone, he owed obedience. These facts made him the servant of Casey and not of defendant and defendant is not liable to him for the negligent acts of his master, an independent contractor. The demurrer to the evidence should have been sustained, and it follows that no error was committed in the granting of a new trial.

Judgment is affirmed. All concur.